UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AASHA DENNIS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF THOMAS JOHNSON AND ON BEHALF OF HER MINOR CHILD, D.J. | CIVIL ACTION |
| | NO. 25-1963 |
| VERSUS | SECTION M (2) |
| WESTBANK FISHING, LLC | |

**ORDER & REASONS**

Before the Court are two motions. The first is a motion to stay this civil action filed by defendant Westbank Fishing, LLC ("Westbank"),[1] to which plaintiff Aasha Dennis responds in opposition.[2] Westbank replies in further support of its motion.[3] The second motion before the Court is Dennis's motion to bifurcate and for separate trial of Westbank's third-party claims,[4] to which Westbank responds in opposition.[5] Dennis replies in further support of her motion.[6] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion to bifurcate and grants in part the motion to stay.

## I. BACKGROUND

This Court has twice recounted the factual allegations underlying this matter in full.[7] It now presents only the facts pertinent to resolution of the present motions.

[1] R. Doc. 64.
[2] R. Doc. 70.
[3] R. Doc. 79.
[4] R. Doc. 65.
[5] R. Doc. 68.
[6] R. Doc. 77.
[7] *See* R. Docs. 47; 63.

On August 28, 2025, Thomas Johnson, a crewmember on the F/V *Francis T. Carinhas*, sustained fatal injuries from a stabbing that occurred onboard the vessel.[8] Dennis, as the representative of Johnson's estate and the legal guardian of her minor child D.J., Johnson's sole heir, brings this survival and wrongful death action at law against Westbank, the owner of the vessel, asserting claims for Jones Act negligence, for failure to render prompt and proper medical care in violation of the Jones Act and general maritime law, and for unseaworthiness in violation of general maritime law.[9] And Westbank brings a third-party complaint pursuant to Rule 14(a) of the Federal Rules of Civil Procedure against Timothy, David, and Josiah Cottrell (the "Cottrell brothers"), who it alleges committed the stabbing.[10] Additionally, Westbank asserts sixteen affirmative defenses to Dennis's claims, including that the Cottrell brothers acted outside the course and scope of their employment, that the Cottrell brothers committed an intentional tort against Dennis for which Westbank cannot be liable, and that Johnson was contributorily negligent.[11]

Westbank's third-party complaint asserts two claims for relief: contribution (Count I) and indemnity (Count II).[12] Westbank's contribution claim alleges that, to the extent it "is liable to Dennis … for the damages arising from the death of Thomas Johnson," the Cottrell brothers "are solely liable for the same injury and death" because they "committed an intentional tort that killed Thomas Johnson," so Westbank may "seek[] contribution from [the Cottrell brothers] for a proportionate share of any liability," since "[u]nder principles of maritime law and equity, [the Cottrell brothers] should bear responsibility proportionate to [their] fault."[13] Westbank's

---

[8] R. Docs. 18 at 2; 50 at 2-3.
[9] R. Doc. 18 at 2-5.
[10] R. Doc. 50.
[11] R. Doc. 21 at 1-4.
[12] R. Doc. 50 at 4-6.
[13] *Id.* at 4.

indemnity claim alleges that the Cottrell brothers' "intentional tortious conduct was the primary, sole, and active cause of death"; that "[i]t would be inequitable for [Westbank] to bear the ultimate liability for [the Cottrell brothers'] intentional tort"; and that Westbank "should not bear financial responsibility for [the Cottrell brothers'] wrongful actions and Westbank should therefore be indemnified by the Cottrell brothers."[14] Although Dennis moved to strike or dismiss Westbank's third-party complaint,[15] this Court concluded that Westbank's third-party complaint against the Cottrell brothers was timely and properly asserted, so it denied Dennis's motion.[16]

According to Westbank, the Cottrell brothers are currently in the custody of the Plaquemines Parish Sheriff's Office, having been indicted on charges of second-degree murder and obstruction of justice.[17] Westbank further represents that the Cottrell brothers have pleaded not guilty, have asserted the affirmative defense of self-defense, and are awaiting trial, which is currently set to proceed on November 16, 2026.[18] Finally, Westbank says that counsel for David Cottrell has indicated that his client would assert his Fifth Amendment right to remain silent if asked to testify in this matter, and it submits that the statements of Timothy and Joseph Cottrell "show that the circumstances leading to Mr. Johnson's death are unclear and remain in dispute."[19]

As the Cottrell brothers are now parties to the action, Westbank moves to stay the civil action pending resolution of the Cottrell brothers' criminal proceedings, while Dennis moves to bifurcate the trial of her claims from any trial of Westbank's third-party claims against the Cottrell brothers.

---

[14] *Id.* at 5.
[15] R. Doc. 56.
[16] R. Doc. 63.
[17] R. Doc. 64-3 at 2.
[18] *Id.*
[19] *Id.*

## II. LAW & ANALYSIS

### A. Westbank's motion to stay

"There is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions … against the same defendant involving the same transactions." *SEC v. First. Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 666 (5th Cir. 1981); *see also Hillhouse v. IPFS Corp.*, 2025 WL 1884847, at *4 (E.D. La. July 8, 2025). District courts generally have wide discretion to stay proceedings before it "in the interests of justice." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). But "'[p]roper use of this authority calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Breaud v. Cantrell*, 2024 WL 4503252, at *5 (E.D. La. Oct. 16, 2024) (quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983)); *see also In re Ramu*, 903 F.2d at 318 (explaining that discretionary stays should not be of indefinite duration). In deciding whether to stay a civil action pending resolution of a criminal case, courts in the Fifth Circuit generally examine: (1) the extent of the overlap between the criminal and civil cases; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the plaintiff's private interests in proceeding expeditiously, weighed against the prejudice to the plaintiff created by a delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest. *Breaud*, 2024 WL 4503252, at *6.

Westbank, in its motion to stay, begins by analogizing this case to several other cases in which courts in the Fifth Circuit, including multiple in this district, have exercised discretion to grant a stay of civil proceedings during the pendency of parallel criminal proceedings.[20] It then

[20] R. Doc. 64-3 at 3-6 (citing *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084 (5th Cir. 1979); *Beauregard v. Breaux*, 2021 WL 4804057 (E.D. La. Oct. 14, 2021); *Shell Offshore, Inc. v. Courtney*, 2006 WL 1968926 (E.D. La. July 12, 2006); *Bean v. Alcorta*, 220 F. Supp. 3d 772 (W.D. Tex. 2016); *Walker v. Wilburn*, 2015 WL 5873392 (N.D. Tex. Oct. 5, 2015); *Knight v. Knight*, 2016 U.S. Dist. LEXIS 159610 (W.D. La. Nov. 17, 2016)).

argues that the six factors typically examined when considering whether to stay a civil proceeding pending a criminal proceeding weigh in favor of staying the action.[21] First, it says that the extent of the overlap warrants a stay of the civil proceedings because the civil and criminal cases "arise out of the same events leading to the death of Johnson," and that Timothy and Josiah Cottrell's statements to police immediately after Johnson's death seem to undermine Dennis's allegations – that all three brothers murdered Johnson.[22] Westbank thus argues that David Cottrell's testimony is crucial to Westbank's defense, as the available evidence thus far seems to indicate that David Cottrell is the most culpable.[23] Second, says Westbank, the status of the criminal case – post-indictment, pre-trial – presents the greatest risk for the Cottrell brothers' self-incrimination and, thus, the greatest prejudice to Westbank's defense.[24] As to the third factor, Westbank argues that the delay will not greatly prejudice Dennis's interests, as delays in civil cases are fairly common; Jones Act wrongful-death plaintiffs are entitled to prejudgment interest; and, because the Cottrell brothers' trial date is November 16, 2026, the requested continuance would be relatively brief and is thus reasonable.[25] Fourth, Westbank says that it would suffer substantial prejudice if the civil action was not stayed because David Cottrell's testimony is crucial to resolve discrepancies between Dennis's allegations and the statements of Timothy and Josiah Cottrell.[26] With respect to the fifth factor, the Court's interest, Westbank simply says that permitting discovery to continue before resolution of the criminal proceeding "would be judicially inefficient and uneconomical."[27] Sixth and finally, Westbank argues that staying this civil case would not greatly affect the public

[21] *Id.* at 6-9.
[22] *Id.* at 6.
[23] *Id.*
[24] *Id.* at 6-7.
[25] *Id.* at 7.
[26] *Id.* at 7-8.
[27] *Id.* at 8.

interest, and, conversely, the public would benefit from the government's ability "to conduct a complete, unimpeded investigation into potential criminal activity."[28]

In her opposition, Dennis first argues that Westbank cannot invoke the Cottrell brothers' Fifth Amendment privilege and it has not shown that any of them has invoked that privilege on his own behalf.[29] And even if a Cottrell brother does invoke his Fifth Amendment privilege, Dennis urges that such privilege should be addressed through a particularized inquiry, by which the Court determines "whether a responsive answer [to a question or a subject generally] presents a real and appreciable risk of self-incrimination," rather than staying the litigation.[30] Second, Dennis contends that her claims should not be stayed because of the Cottrell brothers' failure to answer Westbank's third-party complaint, as default judgment could be entered against the brothers if appropriate.[31] Third, Dennis says the cases to which Westbank cites actually support targeted relief from civil discovery for a Fifth-Amendment-privilege holder rather than a blanket stay of the entire action for an indeterminate duration.[32] Dennis also argues that the stay Westbank requests poses a risk of becoming indefinite, as the criminal trial may be continued, and even a verdict does not completely eradicate Fifth Amendment concerns, as they can arise during sentencing or on appeal.[33] Dennis further contends that bifurcation and "request-specific relief" are the appropriate remedies for the concerns cited by Westbank.[34]

Dennis also submits that the six factors typically examined when considering whether to stay a civil proceeding pending a criminal proceeding weigh against staying the action.[35] Dennis

[28] *Id.*
[29] R. Doc. 70 at 7-8.
[30] *Id.* (quote at 7).
[31] *Id.* at 8-9.
[32] *Id.* at 9-11.
[33] *Id.* at 18-19.
[34] *Id.* at 19.
[35] *Id.* at 11-19.

says the first factor weighs against a stay of the litigation because the factual overlap is only partial insofar as the criminal case will not resolve issues related to Westbank's negligent training or hiring practices, its knowledge (or lack thereof) of the Cottrell brothers' violent propensities, or the timeliness and adequacy of the care Westbank rendered to Johnson after the incident.[36] Then, Dennis says the second factor (status of the criminal case) weighs against a stay because the case is at the pretrial stage and, while the presiding court has set a trial date, such dates are frequently continued, and Fifth Amendment concerns may persist past a verdict, making a stay unduly burdensome.[37] Next, according to Dennis, the third factor weighs against a stay both because Johnson's son was dependent upon him for financial support and because a delay in the proceedings could greatly affect the availability of evidence, as the events underlying the litigation occurred onboard a vessel whose crew will disperse and be more difficult to contact over time.[38] With respect to the fourth factor, Dennis argues that it weighs against imposing a stay, not because Westbank is not burdened, but because its burden – which Dennis claims is merely evidentiary (*i.e.*, the unavailability of David Cottrell's testimony) – can be addressed through alternative evidence, deferral of discovery production from the Cottrell brothers, and a bifurcation of the third-party claims.[39] Dennis then argues that the fifth factor, judicial economy, weighs against a stay because certain discovery requests have been productive.[40] Finally, regarding the sixth factor, Dennis says that the public interest weighs against a stay because, while the public has an interest in the resolution of criminal cases, it also has an interest in the resolution of civil cases, and Westbank has not shown that the civil case threatens the criminal case in any way.[41]

---

[36] *Id.* at 11-12.
[37] *Id.* at 12-14.
[38] *Id.* at 14-15.
[39] *Id.* at 16-17.
[40] *Id.* at 17.
[41] *Id.* at 17-18.

In reply, Westbank says that it would be prejudiced if the case was not stayed pending the outcome of the criminal trial because it may have to produce certain sensitive information in discovery that could be irrelevant if the Cottrell brothers are found to be innocent or to have acted in self-defense.[42] It reiterates its points that the Cottrell brothers' participation in the discovery process is necessary for Westbank to fully prepare its defense and that it has not asked for an indefinite stay – only one through the duration of the Cottrell brothers' trial.[43] Finally, it submits that Dennis has not adequately shown that she will suffer prejudice as a result of a stay.[44]

The Court will first analyze the six stay factors. The first factor is the extent to which the issues in the civil and criminal cases overlap, and it generally carries the most weight in a court's determination of whether to grant a stay. *See Hillhouse*, 2025 WL 1884847, at *4; *Walker*, 2015 WL 5873392, at *6. In this case, there is a great deal of overlap between the issues in the cases because both cases largely depend on the resolution of the Cottrell brothers' fault (including potential criminal liability) for Johnson's death. Dennis's argument that there is minimal overlap between her case against Westbank and the criminal case against the Cottrell brothers fails because one of Westbank's defenses to Dennis's civil suit is that the Cottrell brothers committed an intentional tort which could absolve it of civil liability, but which could prove the Cottrell brothers' fault for Johnson's death. The overlap of the claims is not negated merely because Dennis's claims against Westbank also involve some of Westbank's conduct before and after the incident (such as its hiring and training practices and its rendering of aid to Johnson after the incident) that does not necessarily overlap with the stabbing. Accordingly, this factor weighs in favor of granting a stay.

---

[42] R. Doc. 79 at 1-2.
[43] *Id.* at 2-3.
[44] *Id.* at 3.

The second factor requires consideration of the status of the criminal case. Where a party has been indicted for the conduct underlying a civil case, a stay of the civil case is especially appropriate because the accused is more likely to make incriminating statements.[45] *See Hillhouse*, 2025 WL 1884847, at *5; *Walker*, 2015 WL 5873392, at *7. The Cottrell brothers have been indicted for Johnson's murder and are awaiting trial, so their participation in civil discovery poses the most risk to them at the current stage in their criminal proceedings. Thus, the Court finds that the second factor weighs in favor of granting a stay.

The third factor is the plaintiff's interest in expediency. Courts generally require a greater showing of prejudice than a delay to plaintiff's right to pursue a claim. *See D'Angelo v. Pintado*, 2009 WL 4642009, at *2 (E.D. La. Dec. 2, 2009); *Hillhouse*, 2025 WL 1884847, at *6. The facts of this case took place onboard a fishing vessel, and Dennis asserts that "[s]everal crewmembers have already returned to different states or custodial circumstances," and that a substantial delay could seriously risk the unavailability of witnesses.[46] The Court finds that, given the sometimes transient nature of fishing vessel crews, a stay could result in prejudice to Dennis, especially considering Dennis's representation that discovery has been productive thus far in certain respects that do not implicate the Cottrell brothers' Fifth Amendment rights. Further, the Court recognizes that a stay might be prejudicial to the financial stability of Johnson's young son. As a result, the third factor weighs against granting a stay.

The fourth factor is the private interests of the defendant in securing the stay and the burden the defendant might face if the civil proceeding were not stayed. In this case, the Court finds this

---

[45] Although Dennis urges this Court to consider in connection with this element the possible length of time the proceedings will carry on (and, thus, that the Cottrell brothers' Fifth Amendment concerns may persist), the Court finds that such consideration is not pertinent to this factor and is instead more appropriately considered in connection with the third factor, the plaintiff's interest in proceeding expeditiously.

[46] R. Doc. 70 at 15.

factor warrants the most discussion. Courts usually consider a defendant's conflict between waiving his Fifth Amendment privilege or complying with his civil discovery production obligations. *See Walker*, 2015 WL 5873392, at *8. Given the posture of the present motion – specifically, that the defendant (and movant) Westbank is not the holder of the Fifth Amendment privilege undergirding the motion – the Court analyzes this factor mostly on the basis of Westbank's interest in obtaining evidence from the privilege holders, the Cottrell brothers. As this Court has already explained in connection with the first factor, more than one of Westbank's defenses to Dennis's claims rests largely on the disputed factual circumstances of Johnson's death. For example, one theory of Dennis's case is that Westbank is liable for Johnson's death because it violated its Jones Act and seaworthiness duties when it employed the Cottrell brothers, despite knowledge of their violent tendencies.[47] But the parties and some of the evidence suggest that David Cottrell (who the parties and the evidence suggest wielded the knife) acted in self-defense. Timothy and Josiah, in their statements, paint Johnson as the aggressor.[48] So there is, at the very least, a plausible contention that the death was the result not of the Cottrell brothers' violent tendencies, but of Johnson's aggression and initiation. The prospect that Westbank could be forced to defend against several million dollars in civil liability without evidence from the Cottrell brothers is a heavy and unjustifiable burden. Thus, the Court finds that Westbank has a substantial interest in obtaining a stay as would make available evidence relevant to developing a complete defense.[49]

---

[47] *See* R. Doc. 48 at 3, 5.

[48] *See* R. Doc. 64-4 at 7-15; *see generally* R. Doc. 64-5.

[49] Dennis argues that there is no affidavit from any Cottrell brother swearing that he would invoke his Fifth Amendment privilege, which this Court acknowledges. However, Westbank represents that David Cottrell's attorney indicated that his client would invoke his Fifth Amendment right if served with discovery requests or called to testify at trial. *See* R. Doc. 64-3 at 2. Westbank also indicates that, if this Court found it necessary, Westbank would arrange for David Cottrell to assert his Fifth Amendment right on the record. R. Doc. 79 at 2 n.2. At this juncture, the Court will accept Westbank's representation (really, a common-sense proposition) that David Cottrell would invoke his Fifth Amendment right if called to testify or otherwise produce evidence in this matter.

On the other hand, the Court observes that Westbank faces no undue prejudice with respect to certain ongoing discovery that Dennis represents is unrelated to the Cottrell brothers' possible Fifth Amendment privileges, including discovery about the incident from other witnesses, Westbank's hiring and training policies, and its immediate response to the incident. In other words, Westbank's interest in proceeding to a merits determination in this case is only prejudiced insofar as it cannot obtain certain evidence from the Cottrell brothers about the factual circumstances surrounding the stabbing. In sum, the Court finds that the fourth factor weighs in favor of granting a stay to some more limited extent.

The fifth factor considers the interest of the court. Courts generally have an interest in expediency. *See Hillhouse*, 2025 WL 1884847, at *7-8; *Walker*, 2015 WL 5873392, at *9. But the Court's most important priority is the administration of justice. And stays can be imposed in brief increments with a requirement of regular updates from the parties to ensure the case proceeds in the most efficient way that adequately addresses the legitimate interests of both parties. Thus, the Court determines that this factor is neutral.

The sixth factor, the interest of the public, usually requires the Court to consider the public's interest in just, constitutional, and efficient dispute resolution in conjunction with the public's interest in the integrity of a criminal defendant's Fifth Amendment rights. *See Walker*, 2015 WL 5873392, at *9. As discussed, Westbank indicates that David Cottrell would invoke his Fifth Amendment right if pressed with discovery now. And, also as discussed, the testimony of David Cottrell is crucial to resolving factual disputes at the center of Westbank's defense and third-party claims. While staying the case would not lead to efficient dispute resolution, it would promote just and constitutional dispute resolution while also protecting the public's interest in a

criminal defendant's Fifth Amendment rights. Accordingly, the Court finds that the sixth factor weighs in favor of granting a stay.

Considering all six factors above, the Court finds that Westbank would be prejudiced if the case were not stayed. But it also acknowledges that Dennis would be prejudiced by a blanket stay insofar as evidence relevant to the stabbing and the circumstances of the vessel on the night of Johnson's death can be developed from other sources and may become harder to obtain over time. The Court also recognizes that Johnson's minor son could be prejudiced by an unreasonable delay of the proceedings. Accordingly, the Court will issue a stay of the proceedings for a limited duration and scope. To ensure that the parties are able to obtain evidence that could be lost if not gathered timely, the Court will allow the parties to pursue any and all discovery not directed to the Cottrell brothers or that would implicate the Cottrell brothers' Fifth Amendment privileges. To ensure further that the delay in these proceedings lasts only as long as reasonably necessary, the Court will also require that the parties file, on or before November 1, 2026, and the first day of each third month thereafter until the stay is lifted, a status report specifically addressing the status of the Cottrell brothers' criminal proceedings.

**B. Dennis's motion to bifurcate**

In her motion to bifurcate, Dennis seeks two separate trials – specifically, "that Phase I consist of [her] Jones Act and general maritime law claims against Westbank, Westbank's defenses, and damages," and that Phase II consist of Westbank's third-party claims against the Cottrell brothers, "deferred unless and until they remain necessary after Phase I."[50] She makes six arguments in support of her motion to bifurcate. First, she says that Westbank's third-party claims against the Cottrell brothers need only proceed to trial if a jury renders a verdict favorable to her,

[50] R. Doc. 65 at 1.

and she also says that courts regularly order separate trials on contingent third-party claims to prevent jury confusion.[51] Second, she argues that, although there is some overlap in evidence between her claims against Westbank and Westbank's claims against the Cottrell brothers, the claims are legally distinct insofar as her claims relate to "Westbank's own hiring, supervision, safety, medical-response, and vessel-manning conduct," while Westbank's claims require resolution of issues regarding "the [Cottrell] brothers' direct tort liability, comparative fault, and the legal requirements for contribution or indemnity."[52] Third, Dennis contends that bifurcation would alleviate the heightened risk of jury confusion present in this case, if the jury were asked "to decide several different controversies at once: whether Westbank violated the Jones Act or general maritime law; whether any such violation caused Johnson's injuries or death; the amount of Plaintiff's damages; the nature and comparative fault of each Cottrell brother's conduct; whether any brother acted in self-defense; whether Westbank and the brothers are joint tortfeasors; and whether Westbank is entitled to contribution, partial recovery, or full indemnity."[53] Fourth, Dennis contends that bifurcation of the claims, rather than a stay of the entire action, is the more appropriate mechanism through which to address the concerns raised in Westbank's motion to stay, particularly because a significant amount of discovery is unaffected by the current criminal proceeding and, thus, could remain ongoing, and bifurcation protects Westbank in that it could save Westbank the expense of a second trial.[54] Dennis then argues that Westbank is not as prejudiced as it professes because it already has the statements of Timothy and Josiah Cottrell,

[51] R. Doc. 65-1 at 6-7.
[52] *Id.* at 7-8.
[53] *Id.* at 8-9.
[54] *Id.* at 9-10.

neither of whom has yet invoked his Fifth Amendment privilege, so David Cottrell's testimony would actually be "cumulative."[55]

Westbank, in its opposition, first asserts that bifurcating trial risks violating both Westbank's and the Cottrell brothers' Seventh Amendment right to a single, fair jury trial.[56] It then argues that bifurcation is inappropriate because the trial phases Dennis proposes – both of which would involve determining the party ultimately at fault for Johnson's death – are not sufficiently "'distinct and separable'" such that separate trials can be had without risking inconsistent verdicts or some other form of prejudice to Westbank.[57] Second, Westbank urges that the operative facts that would underlie both of Westbank's proposed trial phases – namely, those concerning the altercation between Johnson and the Cottrell brothers – are substantially overlapping, which weighs against bifurcation.[58] Westbank then contends that the cases Dennis cites in her motion actually stand for the proposition that bifurcation is the exception, not the rule, and that a court should not use its discretion to bifurcate trials where bifurcation might create "'unnecessary delay, additional expense, or some other form of prejudice.'"[59]

Dennis replies that bifurcation would not necessarily risk inconsistent verdicts, as the Court could bifurcate the issues such that, at Phase I, a jury "would decide Plaintiff's Jones Act and general maritime claims, Westbank's defenses, causation, and damages," and then "answer detailed Rule 49 interrogatories concerning the basis of any liability and any common factual issue the Court concludes must be preserved."[60] Then, says Dennis, the Court can determine whether contribution and indemnity claims remain and how best to resolve them, whether by motion,

---

[55] *Id.* at 10-11.
[56] R. Doc. 68 at 3-5.
[57] *Id.* at 4-5 (quote at 4) (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)).
[58] *Id.* at 5-7.
[59] *Id.* at 7-8 (quote at 7) (quoting *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992)).
[60] R. Doc. 77 at 2-3.

immediately submitting them to the same jury, or submitting them later to a different jury that would not be called upon to reexamine Phase I findings.[61] Dennis reasserts that the bifurcation cases cited by the parties favor her position.[62] Next, Dennis urges that a joint trial and a blanket stay are not required because "[b]ifurcation concerns Westbank's affirmative recovery-over claims, not the evidentiary record available to defend Plaintiffs' claims," and that "[i]f Westbank has a superseding-cause defense here, it can present that civil causation defense in Phase I."[63] Finally, Westbank claims that bifurcation promotes efficiency and orderly case management, as the availability of the third-party claims are dependent upon the outcome of Dennis's claims against Westbank.

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P 42(b). The decision whether to bifurcate a trial is "'within the sole discretion of the trial court.'" *Sims v. City of Jasper,* 117 F.4th 283, 290 (5th Cir. 2024) (quoting *Nester v. Textron, Inc.*, 888 F.3d 151, 162 (5th Cir. 2018)). The motion should not be granted lightly. "'There is an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice.'" *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (quoting *Swofford*, 336 F.2d at 415). In deciding whether to grant a motion to bifurcate, the court should consider convenience, efficiency, economy, and prejudice to the parties, with the need to avoid prejudice being the most important consideration. *See Sims*, 117 F.4th at 290. "The party moving for bifurcation has the burden to demonstrate that judicial economy would be promoted

[61] *Id.*
[62] *Id.* at 3-7.
[63] *Id.* at 7.

and that the non-moving party will not suffer prejudice." *Wesco Ins. Co. v. Tauler Smith LLP*, 2020 WL 4369496, at *1 (C.D. Cal. Mar. 10, 2020); *see also Meador v. Starr Indem. & Liab. Ins. Co.*, 2020 WL 1332952, at *3-4 (E.D. La. Mar. 23, 2020) (denying motion to bifurcate when movant failed to carry its burden of proving "an exceptional case warranting bifurcation"); *Colo. Prop. Investors, Inc. v. HCNO Servs., Inc.*, 1998 WL 892669, at *1 (E.D. La. Dec. 18, 1998) (denying motion to bifurcate because movant did not carry its burden).

In this case, bifurcation is not warranted. Dennis submits that bifurcation "addresses Westbank's stated concerns [of prejudice resulting from the Cottrell brothers' invocation of their Fifth Amendment rights during civil discovery] without requiring [her] and her minor child to wait for the resolution of criminal proceedings and any later proceedings before obtaining a civil adjudication against Westbank."[64] But Dennis's position fails to appreciate the overlap of the Cottrell brothers' criminal proceeding and the civil claims she asserts against Westbank. As this Court has previously explained, Westbank is unable to obtain facts vital to its defense of Dennis's Jones Act and unseaworthiness claims without the testimony of the Cottrell brothers who are currently awaiting trial and who have a Fifth Amendment right against self-incrimination. In other words, the Cottrell brothers are crucial witnesses in regard to the resolution of Dennis's claims. Westbank does not merely speculate that their testimony could inure to its benefit; instead, it provides the statements of two of the brothers which together create a serious factual dispute central to its defense, making David Cottrell's testimony even more critical.[65] Accordingly, without the meaningful participation of the Cottrell brothers (especially David) in the civil trial (including the Phase I Dennis proposes), Westbank would be unduly prejudiced not only in its pursuit of its third-party claims, but in its defense against Dennis's claims. Bifurcation of Dennis's

[64] R. Doc. 65-1 at 2.
[65] *See generally* R. Docs. 64-4; 64-5.

claims against Westbank and Westbank's claims against the Cottrell brothers does not cure that prejudice. To the contrary, bifurcating the claims and forcing Westbank to trial on Dennis's claims exacerbates the prejudice.

Further, neither convenience nor judicial economy weighs in favor of bifurcating the trial into two phases. Because the same factual scenario – the stabbing death of Johnson – is central to both Dennis's Jones Act and unseaworthiness claims and Westbank's third-party contribution and indemnity claims, bifurcation of the issues would be both inconvenient and inefficient.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Westbank's motion to stay (R. Doc. 64) is GRANTED IN PART, and this action is STAYED until further notice, except that the parties may pursue any and all discovery not directed to the Cottrell brothers or that would implicate the Fifth Amendment rights of any of the Cottrell brothers.

IT IS FURTHER ORDERED that the parties file a status report, on or before November 1, 2026, and the first day of each third month thereafter until the stay is lifted, specifically addressing the status of the Cottrell brothers' criminal proceedings.

IT IS FURTHER ORDERED that Dennis's motion to bifurcate (R. Doc. 65) is DENIED.

New Orleans, Louisiana, this 21st day of August, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE